# SPRING SPECIAL TERM.

## CHARLESTON.

### YATES *v.* WEST GRAFTON.

Submitted January 15, 1890—Decided March 3, 1890.

1. PUBLIC ROADS—CONSTRUCTION OF STATUTES.
    The provision of our Code, that when any road is altered, the former road shall be discontinued to the extent of such alteration, and no further, and the new one established, gives to the order of the County Court establishing an alteration of an existing road the effect of discontinuing, as a public highway, so much of the original road as may be excluded from the new route, without any further or separate order to that effect.

2. PUBLIC ROADS.
    In order to re-establish this lawfully discontinued portion of the old or original road, the alteration must be set aside, or there must be a new statutory establishment or a new dedication by the owner, and recognition or acceptance by the County Court, in the manner provided by law.

3. PUBLIC ROADS—WAIVER.
    Although notice is required to be posted as directed in section 30, chapter 43 of the Code, before a road, or any portion thereof,

| 33 | 507 |
| 35 | 410 |
| 33 | 507 |
| 38 | 81 |
| 33 | 507 |
| 40 | 287 |
| 33 | 507 |
| 44 | 459 |
| 33 | 507 |
| 50 | 237 |
| 33 | 507 |
| 52 | 399 |
| 33 | 507 |
| 54 | 18 |
| 54 | 269 |
| 33 | 507 |
| 55 | 15 |
| 33 | 507 |
| 58 | 310 |
| 58 | 311 |
| 58 | 485 |
| 58 | 486 |

can be lawfully discontinued, yet after the final order discontinuing has been acquiesced in for a period of eighteen years, the omiss   1 of such notice will be regarded as waived.

4. PUBLIC ROADS—STREETS AND ALLEYS—PRESUMPTION OF LAW.
Under section 31 of chapter 43 of the Amended Code, which is the same as section 31 of chapter 14 of the Acts of 1881, when the owner permits the use of his land as a public road, street or alley for a long time, such user will not now be presumed to be a mere license, but a dedication; and the acceptance of the county or city or incorporated town need not be proved by matter of record, but may be presumed from acts of recognition, acceptance and claim.

5. PUBLIC ROADS—STREETS AND ALLEYS— INJUNCTION.
Injunction is a proper remedy to restrain a town from opening a street through a person's land without first condemning it according to law, where there has been no dedication of such street to public use.

*M. H. Dent* for appellant.

*J. H. Holt* for appellee.

LUCAS, JUDGE.

The plaintiff instituted a suit in chancery against the town of West Grafton, and certain gentlemen named in the bill as the municipal officers of said town, in June, 1889, praying an injunction to restrain the town authorities from taking certain land of the plaintiff or any portion thereof, for a public highway or street, until the same had been purchased or condemned in the manner provided by law, and also that the damages suffered by the plaintiff, by reason of the unlawful acts of the defendant as charged in the bill, should be determined and decreed to the plaintiff, and for general relief. Injunction was granted as prayed for in the bill.

The joint and several answer of the defendants was filed promptly. In this, they did not dispute the title of the plaintiff to the land, over which the alleged highway or street had been constructed, but claimed and averred that so long ago as the year 1845, the County Court of Taylor County established a county-road, a portion of which ran across the nine and three quarters acres of the plaintiff, and that said section of road so located, and established upon and across the said nine and three quarters acres of land claimed by the said

complainant, has never been discontinued or annulled by any order of the County Court, but on the con""ry said road has been used ever since its establishment {. a public road and maintained and worked as such by the road commissioners in that precinct in said county, up to and until the time of the incorporation of the respondent town in the year 1874, when it passed under its jurisdiction and control.

They alleged that since the incorporation of the town, it had maintained said road as a public street.

They are at a loss, they aver, to understand upon what pretext the complainant charges that the town is a trespasser, unless it be a false and improper construction of an order of the board of supervisors of Taylor County, made in the year 1870, changing a portion of said road, of which, this said street is a part, but which change was not intended to change and does in no wise change that portion of said road running across the said nine and three quarters acres of land, as your respondents are informed and believe.

There is exhibited with the bill both the original order of the County Court, dated May 26th, 1845, establishing the old road, and the order of the supervis.or of August 3rd, 1870, whereby it was ordered—"that so much of said report (of the viewers) as locates a change in the road from the northwest corner of the fair-ground to a point on the old Webster road, near the U. S. Cemetery, through the lands of James Yates's heirs, be established," and that the road-surveyors be required to open, work and keep in repair said road *etc.*

It is admitted that the change established by this order was from the original route, now in dispute, to the new or substituted route, which has recently been sold by the town to the Baltimore and Ohio Railroad Company, for $250.00.

But to break the force of the facts thus established, the answer avers that: said road, having been established by the County Court of said county and maintained by said county authorities, as a public road and occupied and used as such up to and until it came under the jurisdiction and control of the respondent town, and since that time it has been kept and maintained, and used and occupied as a public street by said town, it is now, and at the time of the filing of

said bill was, a public street and under the control and juris-
diction of said respondent town, and its officers, and that it
was not necessary or reasonable that said street should be
purchased or condemned, before the said town authorities
could go upon and repair the same.

The respondents maintain, therefore, that said street was,
when the bill was filed, a *public highway*, wholly within their
jurisdiction and control, and that they were only putting it
in a proper condition for the use of the public when they
were served with the order of injunction.

A great deal of testimony was taken in support of the
averment of the answer that the original or "old road,"
established in 1845, had never been abandoned, or, by any
proper authority, closed against public travel. An equal, or
perhaps greater, amount was taken by the complainant,
tending to show that such use by the public was only
permissive, the adjoining lands lying out in a common, un-
enclosed; and that in 1882, when he inclosed his adjacent
lands, he fenced in the old road.

On the 6th day of July, 1889, at a special term, the
Circuit Court heard the cause upon the proceedings, and
pleadings, and the depositions and documentary evidence,
and dissolved the injunction and dismissed the bill at the costs
of the plaintiff.

If the action of the Circuit Court involved the considera-
tion of the weight and effect of the conflicting parol testi-
mony only, we should hesitate to reverse its judgment, al-
though we might think that had the case been presented to
this Court in the first instance, we might have reached a con-
clusion different from that announced by the lower court.
This would be in accordance with the rule heretofore enun-
ciated by this Court in *Smith* v. *Yoke*, 27 W. Va. 639, *Doonan*
v. *Glynn, &c.*, 28 Id. 715, and other cases.

But in this case, there is documentary evidence involving
the application and construction of a statute, which we think
changed the burden of proof, and ought to have led to a
different conclusion from that reached by the Circuit Court.

It is an admitted fact that in 1870 the board of super-
visors, under a proceeding instituted by themselves, establish-
ed a change in the line of the road, whereby the line as now

claimed was altered, and the new and much shorter route adopted.

Such an order, one would suppose, *ex vi termini* meant an abandonment of the old location. But we are not left to conjecture on this subject, since the law then and still in force provides: "*When any road is altered, the former road shall be discontinued to the extent of such alteration, and no further, and the new one established,*" Code 1868, Chap. 43, sec. 32, p. 273.

There can be no doubt, therefore, that the order of the County Court establishing an alteration in the road, as it then existed, did, by virtue of the statute, establish the new route, and discontinue the old. This being true, the question arises whether the old road has ever been in any legitimate manner re-opened, or re-dedicated to the public. The burden of proof in such an issue would be upon the county, or, since 1874, when the town was incorporated, upon the town.

The modes in which such re-dedication or re-establishment might have taken place are several. The county or town might by proper proceeding, as authorized by statute, have re-opened it. This, it is conceded, was not done. The owner by *deed* might have dedicated it to the public. This however is not claimed; on the contrary, when partition came to be made of the land of the heirs of James A. Yates, through which this old road passed, no reference or allowance was made for any such public road. The owner might have dedicated the road by *acts or declarations.* Upon this subject, the Court of Appeals of New York thus lays down the law: "Undoubtedly the owner of land may dedicate or set apart a street or highway through it to the public use, and if the dedication be accepted, it will work an estoppel *in pais*, precluding the owner from asserting any right inconsistent with such use. The dedication and acceptance are to be proved or disproved by acts of the owner. Both are questions of intention. The owner's acts and declarations should be *deliberate, unequivocal, and decisive,* manifesting a positive and unmistakable intention to permanently abandon, his property to the specific public use. If they be equivocal, and do not clearly and plainly indicate the intention to permanently abandon the property to the use of the public, they are in-

sufficient to establish a case of dedication." *Holdave* v. *Trustees etc.*, 21 N. Y. 477.

This language was adopted and approved by this Court, in *Pierpoint* v. *Harrisville*, 8 W. Va. 220.

It will scarcely be contended that in this case there were, by the owner, any such deliberate, unequivocal, and decisive acts. On the contrary, when he came to inclose this land in 1882, which was theretofore an open common, at one time partly in timber, he *fenced in the road*, and shut off the travel over it, and this fence he has steadily maintained in a condition more or less dilapidated, until the town-authorities, at a very recent date, having sold the new road, and the bridge to which it conducted having been washed away, determined to re-establish the road made as a public highway.

Finally, this road might have been re-established by some informal action of the County Court clearly recognizing this as a public road, such as having it worked under the direction of a surveyor of roads, provided such recognition and supervision were acquiesced in by the owner for a long period of time. *Ball* v. *Cox*, 28 W. Va. 409.

In the absence of express legislation upon the subject, this mode of establishment was based upon presumption, and, as usual in analogous cases, the period upon which such presumption rested was the lapse of twenty years.

Thus in *State* v. *Marble*, 4 Ired. 318, cited by Judge SNY-DER in *Ball* v. *Core*, *supra*, it is said :

"There may be a road *de facto*, and the only person who can question the right to such a road is the owner of the land; but the owner can only be bound by a proceeding against him according to the laws of the land, or by a *user* of twenty years, from which such proceedings will ordinarily be presumed."

If this mode of establishment be relied on in this case, the evidence would not support the claim; for no such period has elapsed, since the road was discontinued, in 1870.

In the case of the city of *Wheeling* v. *Campbell*, 12 W. Va. 36, a dedication and acceptance of a public street were presumed from a *user* of forty years by the public.

Again, in *Sheff and wife* v. *the City of Huntington*, 16 W. Va. 325, it is said : "In an action for an injury, where it is

material to the plaintiff's case to prove that a road mentioned and described in the declaration is a *public road*, and the uncontradicted evidence before the jury shows that the said road had been used as a public road for forty years, and the street, commissioner of the city had for years kept it up as such, the jury are warranted in finding it was a public road."

I have been unable to find any case in Virginia or in this State, where a *user* of less than twenty years has been held sufficient to warrant the presumption of a dedication and acceptance.

In Kelly's Case, 8 Gratt. 832, there is a very able discussion of this question, and the conclusions reached in that case are binding authority for this Court, except so far as modified by subsequent legislation. The propositions laid down in that case are as follows: "The mere *user* of a road by the public, for whatever length of time, will not constitute it a public road, and as mere permission to the public by the owner of land to pass over a road upon it, is, without more, to be regarded as a license, and revocable at the pleasure of the owner. If a County Court lays off a road, before used, into precincts, and appoints an overseer or surveyor for it, thereby claiming the road as a public road ; and if after notice of such claim, the owner of the soil permits the road to be passed over for a long time, the road may be well inferred to be a public road."

In accordance with this decision, there was embodied in the Code of 1868, the following provision : "Every county road heretofore established and opened pursuant to law, and which has not been lawfully discontinued or vacated, shall be continued as such, under the provisions of this chapter, until properly discontinued ; and every road worked as a public road, under the direction of a surveyor of roads, shall in all courts and places be deemed a public road." (Code 1868, chap. 43, sec. 31.) In the Acts of 1872–73, this section was retained unaltered. (Acts 1872–73, chap. 194, sec. 31.)

In the Acts of 1881 (chap. 14, sec. 31), we find the section enlarged, so as to embrace streets and alleys in incorporated cities, towns and villages. The section was made to read as it now reads in our Amended Code—(See Code

1887, chap. 43, sec. 31, page 326)—as follows: "Every county road, bridge and landing, and every street and alley in an incorporated city, town, and village, heretofore established and opened pursuant to law, and which has not been lawfully discontinued or vacated, shall continue as such, until properly discontinued, and every road, street or alley used and occupied as a public road, street or alley shall in all courts and places, be taken and deemed to be a public road, street or alley (as the case may be) whenever the establishment thereof, as such, may come in question."

This section is not intended to provide any new or informal method of establishing new roads, or re-establishing such as have been lawfully discontinued. It merely provides a rule of evidence somewhat more favorable to the public than that heretofore recognized, as we have already seen it expounded in Kelley's Case, *supra.* Under this section, as it now stands, and has stood since 1881, the use or occupation of a road, street or alley by the public, as a public highway, for a long period of time, would not, without more, be regarded as a mere license, but as a dedication; and the acceptance of the same by the county or city authorities would be presumed without record evidence. from any acts of recognition and appropriation, sufficiently unequivocal to prove the intention to claim the road or street as a highway.

Now, applying these principles to the case under consideration, since the period of lawful discontinuance of the old road, we find no evidence either of a new dedication by the owner, or of acceptance by the County Court. The land being uninclosed, may have been frequently traversed by neighbors and citizens, but we find neither recorded or other evidence of acceptance or appropriation by the County Court, during the period from the lawful discontinuance, in 1870, till the incorporation of the town, in 1874. Neither do we find any such acts of recognition, by the town-authorities, between the period of incorporation, and 1882, when the owner inclosed the land. When the town was incorporated, the section we have been considering—(Sec. 31, chap. 43, Acts 1872–73) did not, in towns, apply to streets and alleys, but only to county roads; so that the law then applicable to

streets and alleys in incorporated cities and towns, was, in my opinion, just as had been enunciated in Kelly's Case, *supra.* And under that exposition of the law, there is nothing in the evidence to support the claim that this road had been re-established prior to 1882. Since that date (1882), there has been no such *user* by the public, or acquiesence by the owner, or recognition, or acceptance by the town-authorities, as to constitute a re-establishment of this discontinued road as a public highway.

Something has been said in the written arguments about the absence of evidence that the *notice* required by Sec. 30 of chap. 43 of the Code, was posted as prescribed by law—that section provides that "the supervisors of a county, upon petition, direct any county-road or landing therein to be discontinued; *but notice* of *every such* petition *must,* three weeks at least before it is acted upon, be posted at the front door of the court house and at three public places in every township in which any part of the said road or landing may be."

I do not think that this omission, if such there were, can now be taken advantage of by the appellees. There is nothing in the chapter authorizing these proceedings which directs such notice to be made a part of the record. If not given, and it be a case requiring it, the omission in order to be taken advantage of, must appear on the record, as was the case in *Conrad v. Lewis Co.,* 10 W. Va. 784; or there must be sufficient positive evidence *aliunde* introduced to rebut the presumption that the proceedings were regular. Here, there is nothing on the record to indicate that the proper notice was not posted, and no evidence on the subject but the certificate of the clerk of the County Court, that he has "examined the file of original papers in the case of Change in Road from Fetterman bridge to Payne's, and find, no such notice to the public, as is provided for in sec. 30 of chapter 43 Code of West Virginia, or any record of such notice, having been given in the case." Now, as we have seen, the law did not require any record of this notice, nor any copy to be kept by the clerk.

In *Conrad* v. *Lewis Co.,* the objection was raised by an independent body of citizens, acting on behalf of the public. Here, the defect is sought to be availed of by the successors

of the County Court, the very corporate body that inaugurated, apparently without any petition, this alteration of the road, and were themselves responsible for the legality and regularity of their proceedings, and could not take advantage of their own wrong or default. These proceedings were closed by final order entered nearly *nineteen years* before this defect was discovered, or advantage sought to be derived from it. Surely, after enjoying the advantage of the order of 1870, which opened the new road, and by virtue of the statute, discontinued the old, for a period of *eighteen years* of transportation and travel, and after selling said new road for $250.00 to the Baltimore & Ohio Railway Company, the County Court nor its successor, can not now be heard to impeach the validity of their own order. Consult *White* v. *Coleman,* 6 Gratt. 138, and *Jeter* v. *Board, etc.,* 27 Id. 910, syl. 3.

The method adopted by the plaintiff in the bill of injunction to arrest the opening of the road, by a restraining order, was the proper mode of proceeding as was decided by this Court in *Pierpont* v. *Harrisville,* 9 W. Va. 215.

We are therefore, of opinion that the decree of the Circuit Court of Taylor county, entered on the 6th of July, 1889, dissolving the injunction, and dismissing the bill, and decreeing costs against the plaintiff, should be reversed and annulled with costs to the appellees.

And this Court proceeding to enter such order as the Court below ought to have entered, doth adjudge, order and decree that the injunction awarded in this cause by the judge of the Circuit Court of Taylor county, be and the same is hereby perpetuated, till such time as the town of West Grafton shall acquire the legal right to open, as a public highway, the street or road through the land of the plaintiff, in the bill mentioned in the manner prescribed by law; and that the defendant, the town of West Grafton, pay to the plaintiff his costs expended in this cause in the Circuit Court of Taylor county.

REVERSED.