CITY OF BECKLEY, *etc. v.* MYRTLE BAIR GEORGE

(No. 9126)

Submitted February 11, 1941. Decided March 4, 1941.

*Ben H. Ashworth,* for appellant.
*Hutchinson, Crouse & Trail,* for appellee.

Fox, Judge:

This is a suit instituted by the City of Beckley against Myrtle Bair George, in the Circuit Court of Raleigh County, the purpose of which is to require the defendant to restore to the City a parcel of land described as a connecting portion of Prince Street, and seeking to enjoin her from trespassing thereon or interfering with the improvement of said street. From a decree denying relief and dismissing its bill, the City prosecutes this appeal.

The controversy grows out of an alleged offer of dedication of the strip of land in question made by Alfred Beckley, Sr., through a declaration in a deed executed by him to Euphronius D. George, dated the 21st day of June, 1870, which deed conveyed two certain lots in the then Town of Beckley described as "fronting on an alley of ten feet running from Prince Street to Neville Street, back of lots 38, and 39, each lot 80 feet on the alley and running with Prince Street 175 feet in depth." It is contended by the plaintiff that this deed evidences an offer on the part of the grantor to dedicate the ten-foot alley and a section of Prince Street extending one hundred and seventy-five feet along one of the lots so conveyed.

It is necessary at this point to give a history of the steps taken to establish and incorporate the Town of Beckley. It appears that the Town was granted a charter by the General Assembly of the Commonwealth of Virginia on the 4th day of April, 1838; that it was established on land owned by Alfred Beckley, Sr., and a map showing an allotment of certain lands into town lots, and on which streets and alleys are laid down, was recorded in the office of the Clerk of the County Court of Fayette County, in which the Town of Beckley was then located, in the year 1848. A copy of this map shows Prince Street and Neville Street, and a street called the Fayette and Kanawha Turnpike. The Turnpike passed in front of Lots 39, 40 and 41, as they are laid down on said map. Prince Street is shown to pass along the western side of Lot 39, and this lot and Lot 40 adjoining extend to the outward limits of the allotment. There is no alley in the

rear of said lots. There is recorded in the office of the Clerk of the County Court of Raleigh County a map dated August 9, 1871, designated "Map of the Town of Beckley as proposed to be incorporated under the Act of the Legislature of West Virginia." The writing on said map, including the signature of Alfred Beckley, Sr., is shown to be in his handwriting. The Town of Beckley was incorporated by the Legislature of West Virginia on the 20th day of February, 1872, and the limits of the Town as set out in its charter are, with the exception of one call apparently omitted, identical with the boundaries of the Town as laid down on this map. The 1871 map shows some extension of the town beyond that laid down on the map prepared in 1838. Prince Street and Neville Street appear thereon, as well as the Fayette and Kanawha Turnpike. Lots 38, 39, and 40 appear thereon, and immediately back of them is an alley and back of this alley are three lots Nos. 45, 46, and 47, which did not appear on the map of 1838, and on the western side of Lot 47 there is an extension of Prince Street for the full length of the lot. It is contended by the plaintiff that this map of 1871, while subsequent to the deed to George, dated June 21, 1870, was in existence, or the equivalent thereof was in existence, at the time of the conveyance to George, and that said conveyance must have been made with regard to such map, and, if so, the fact that the map was not actually prepared for recordation until more than a year later is unimportant. The further contention is that Euphronius D. George, having accepted a conveyance of the two lots with reference to the alley and the extension of Prince Street, was estopped to deny the existence of the alley and street, and that such estoppel extends to the defendant in this cause, who claims Lot No. 47 as his successor in title.

It appears from the record that the alley between Neville and Prince Streets has been in constant use as a public highway ever since the conveyance to George, and there seems to be no question as to the offer of dedication of the alley nor its implied acceptance by the Town of Beckley and its use by the public. However, a different

situation exists with respect to the extension of Prince Street along said Lot No. 47. It should be noted here that while the deed to George does not convey the two lots mentioned therein by number, it is conceded that the lot alleged to run with the Prince Street extension is Lot 47 and is referred to as such in subsequent conveyances. Shortly after the conveyance by Beckley to George, he took possession of the lots conveyed to him, and in addition took actual possession of and enclosed a triangular strip of land extending from near the rear end of Lot 47 running diagonally across the strip claimed to be part of Prince Street and embracing a small boundary west of said street. A dwelling house was erected on Lot No. 47, which extended for some distance on the strip claimed to be Prince Street, and a barn and coal house were erected entirely on the strip claimed as a street. This possession continued until 1933, more than sixty years, and was surrendered only upon the execution of a contract between the City and defendant's predecessor in title, by which he agreed to convey the strip of land now in dispute for use as a street. The record does not show formal acceptance or any act of the Town of Beckley, or the City which grew out of the town, which can be construed as an implied recognition or acceptance of that part of Prince Street which lies along the side of Lot No. 47. The defendant contends that there never was an acceptance of that part of Prince Street and, in fact, denies that there was ever an offer to dedicate the street to the town. She avers adverse possession for this long period of time and claims legal title to the land involved. It is not entirely clear whether she claims title under her alleged adverse possession, or whether that claim is based upon the lack of right in the Town to any part of this land because of lack of an offer of dedication and acceptance thereof. It is conceded that if there was an offer to dedicate the strip of land to the Town and an acceptance thereof, possession, even though adverse, would not run against the public right, under the authority of *Ralston* v. *Town of Weston*, 46 W. Va. 544, 33 S. E. 326, 76 Am. St. Rep. 834; *Town of Weston* v. *Ralston*, 48 W. Va. 170, 36

S. E. 446; and in any event possession must have been held either under color or claim of title. For reasons hereinafter stated, we do not think defendant and those under whom she claims had color of title, and there is no clear evidence of any claim of title.

The basic question in this cause is whether there was a dedication of the section of Prince Street in controversy in the sense of an offer to dedicate by the owner of the land, Alfred Beckley, Sr., and an acceptance thereof by the Town of Beckley. In this connection it should be stated that dedication involves not only an offer to dedicate, but an acceptance thereof, either express or implied, by a public authority having power to pass upon the matter. If there was such offer and acceptance, the possession of the defendant and those under whom she claims means nothing, so far as it affects the public right. But if the Town did not accept, and there was not a complete dedication of this particular strip of land to the public, the right of the Town to any interest therein does not exist, and if it would seek possession thereof for public purposes must secure same through the ordinary method of condemnation under the power of eminent domain. The authorities are in full agreement with the proposition that to constitute a valid dedication, there must not only be an intention on the part of the owner to dedicate a property to the public use, but that such intention must be manifested in a positive and unmistakable manner. The principle was established early in the history of this State. In *Pierpoint* v. *Town of Harrisville,* 9 W. Va. 215, this Court, speaking through Judge Green, held that the owner of property might dedicate his land to the public use by acts and declarations without deed, but that such acts and declarations "must be deliberate, unequivocal and decided, manifesting a positive, and unmistakable, intention to permanently abandon his property to such public use."; and in the opinion used this language, quoting from an older case, " 'Undoubtedly the owner of land may dedicate, or set apart, a street or highway, through it to public use, and if the dedication be accepted, it will work an estoppel *in pais,* precluding

the owner from asserting any right inconsistent with such use. The dedication and acceptance are to be proved, or disproved, by acts of the owner. Both are questions of intention. The owner's acts and declarations should be deliberate, unequivocal and decisive, manifesting a positive, and unmistakable intention, to permanently abandon his property, to the specific public use. If they be equivocal, and do not clearly and plainly, indicate the intention to permanently abandon the property to the use of the public, they are insufficient to establish a case of dedication.' " There would appear to be no logical distinction in principle as between a formal dedication by deed and any other type of dedication. The principle announced in this case has been consistently upheld by numerous decisions of this Court, among which are: *Boughner* v. *Town of Clarksburg,* 15 W. Va. 394; *Miller* v. *Town of Aracoma,* 30 W. Va. 606, 5 S. E. 148; *Miller* v. *City of Bluefield,* 87 W. Va. 217, 104 S. E. 547. There must be an acceptance of the dedication, and in *Glendale* v. *Improvement Co.,* 103 W. Va. 91, 137 S. E. 353, 355, it was held that "acceptance of an offer of dedication must be shown by evidence that is clear, satisfactory and unequivocal, either by resolution of record, or by acts of the proper authority recognizing the existence of the way as a public one and holding and treating it as such." However, acceptance need not be proven by a matter of record, but may be presumed from acts of recognition, acceptance and claim. *Yates* v. *West Grafton,* 33 W. Va. 507, 11 S. E. 8; *Taylor* v. *Philippi,* 35 W. Va. 554, 14 S. E. 130; *Hast* v. *Railroad Co.,* 52 W. Va. 396, 44 S. E. 155; *Pence* v. *Bryant,* 54 W. Va. 263, 46 S. E. 275; *Town of Harper's Ferry* v. *Kaplon & Bro.,* 58 W. Va. 482, 52 S. E. 492; *Hicks* v. *City of Bluefield,* 86 W. Va. 367, 103 S. E. 323; *City of Point Pleasant* v. *Caldwell,* 87 W. Va. 277, 104 S. E. 610. "An intent on the part of the owner to dedicate is absolutely essential, and unless such intention can be found in the facts and circumstances of the particular case, no dedication exists. But the intention to which courts give heed is not an intention hidden in the mind of the landowner, but an intention manifested by his acts. It is the intention which finds

expression in conduct, and not that which is secreted in the heart of the owner, that the law regards. Dedications have been established in every conceivable way by which the intention of the party can be manifested." 3 Dillon Municipal Corporations, section 1079. The same authority, sections 1086-1090, holds that there must be acceptance by the authority to whom the offer of dedication is made, although there may be a partial acceptance of such offer, and the time within which the acceptance is indicated, if reasonable, is unimportant. The needs and convenience of the public must be taken into consideration respecting both the time and the partial acceptance of the offer of dedication. The burden of establishing dedication rests upon the party asserting the same—in this case the plaintiff. *Mason* v. *Town of Mason,* 23 W. Va. 211.

Before proceeding to apply what we conceive to be the law to the facts developed by the record, two occurrences bearing upon the supposed attitude of the City of Beckley and Euphronius D. George, the defendant's predecessor in title, in regard to the street in question, should be noted. About the year 1902, it appears that a property owner living in the neighborhood of the alleged extension of Prince Street, contemplated placing his property on the market, and at that time Euphronius D. George, in talking with his son, Fred George, and having reference to Prince Street, said, "If the old man 'Temp' (referring to a Mr. Quessenberry) sells this property down there I'll have to open up the street there." He also said, "I am right on the street there." Fred George testified that he took steps to see that a right-of-way was opened from the Quessenberry property and thought that the matter of opening the street had been settled. The City contends that this indicates a recognition by Euphronius D. George of the acceptance by the Town of the street in question. To balance this contention, the record shows that on the 18th day of December, 1933, the City of Beckley entered into a contract with C. E. George, defendant's predecessor in title, and defendant as his wife, whereby, in consideration of certain undertakings on the part of the City and a small cash payment, the parties

of the first part agreed to deed to the City, with covenants of general warranty, a sufficient amount of land" * * * at and beyond where East Prince Street now ends, east of North Kanawha Street, Beckley, West Virginia, so that Prince Street can pass almost on a straight extension from the street as it now exists down to the ravine * * *." It is contended by the City that this contract was entered into without authority of the Common Council, and without having complied with certain legal requirements necessary to bind the City. This might be true if the question involved was one affecting the responsibility of the City based upon this alleged agreement, but that does not lessen the evidential value of the contract as tending to show the attitude of the City at that time. The fact that the City, through its officials, thought it necessary to secure this contract, bears upon the question of whether or not there ever was an acceptance of the offer to dedicate this particular street such as is now claimed.

The case is not without its difficulties. However, we are of the opinion that the deed from Alfred Beckley, Sr., to Euphronius D. George, dated June 21, 1870, operated as an offer to dedicate the ten-foot alley and the section of Prince Street running along the west side of Lot 47; that the map of 1871, or a similar paper, was in existence prior to the date of the said deed, and that the deed was executed with reference thereto; that the City of Beckley was incorporated on the 20th day of February, 1872, with reference to the map dated August 9, 1871; that the Town of Beckley, through acts and usage, accepted the offer of dedication of the ten-foot alley dividing Lots 38, 39 and 40 from Lots 45, 46 and 47, as appears on the map of 1871; but we are unable to find from the record that there was ever an acceptance by the Town of Beckley of that part of Prince Street extending along side of what is now designated as Lot 47. There are many reasons which support this conclusion. The street was, of course, not needed at that time, and while mere lapse of time from the date of an offer of dedication and its acceptance is not material, if acceptance be made prior to a withdrawal of the offer, yet the fact that for more than sixty years

the Town paid no heed to the occupancy of this strip of land by the original George, and those who held under him, is, by reason of the very length of time, strong evidence that it never accepted such offer; the fact that the City permitted the street to be enclosed, and valuable buildings to be located thereon, including, in part, the residence of George; the fact that when the time came when it seemed necessary to open, extend and improve this street the City, instead of asserting its right as the owner of the strip in question, chose to negotiate with the defendant's predecessor in title for its purchase, all indicate that there had never been an acceptance of the offer of dedication made by Beckley in 1870. The burden was on the City to establish this acceptance. Its acceptance cannot rest upon conjecture or presumption. The acceptance not being shown, the City has no right whatever in the property. The fact that the title papers under which the defendant holds clearly do not cover the strip of land in question and the further fact that her possession may not have been either under color of title or claim of title is of no consequence to the City, when it has failed to show title in itself. The familiar rule, so often applied to ejectment cases, that a plaintiff must recover on the strength of his own title, and not the weakness of the defendant's title is applicable here.

The statement made by Euphronius D. George in 1902, indicates that he had knowledge of the offer of dedication of the portion of Prince Street in question, and that, under his deed, his property did not extend beyond the line of said street, and he probably thought he would be required to open up that street; but the City's claim cannot rest entirely upon this admission, whatever its effect may be. It is fair to say that the statement can be given interpretations other than that contended for by the City, although, in our opinion, George recognized the existence of this street. Even so, more than thirty years passed thereafter without action on the part of the City, and when it did act, in connection with the street, it sought to deal with the then owners of the adjoining property. Giving to this statement the full weight to

which, in any view, it is entitled, it fails to show acceptance on the part of the City of the offer of dedication made by Beckley.

We do not believe that the plaintiff has met the burden resting upon it in this cause. Too much is left to conjecture and doubt. Where clear evidence of dedication, which includes acceptance, is required, there is nothing in the record showing any affirmative order, or any act of the City from which acceptance may be implied. On the contrary more than sixty years passed before the City asserted its claim, and during this long period there was clear notice of the occupancy of the land in question by the Georges. This, alone, would be sufficient in ordinary cases to bar the claim now asserted, and that claim is considered only by reason of the rule that the statute of limitations and laches do not run against the public in matters affecting streets and highways. Evidently the City did not contend for its present claim when it contracted to purchase the disputed strip in 1933. Under the circumstances the case is one where the finding of the trial court is entitled to peculiar weight. It cannot be said that the decree entered on such finding is plainly wrong.

The decree of the Circuit Court of Raleigh County is affirmed.

*Affirmed.*